```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ALABAMA
                     NORTHWESTERN DIVISION
```

FILED
01 JUN -5 AM 8:39

U.S. DISTRICT COURT
N.D. OF ALABAMA

TERRY L. McCLURE,                )
     Plaintiff,                  )
                                 )
vs.                              )   Civil Action No. CV-00-S-1038-NW
                                 )
PIERRE R. MICHAUD, M.D.,         )
     Defendant.                  )

ENTERED
JUN 5 2001

## MEMORANDUM OPINION

This is a medical malpractice case. The action originally was filed in the Circuit Court of Lauderdale County, Alabama, on February 17, 2000, but removed to this court on April 20, 2000, based upon the parties' diversity of citizenship and the requisite amount in controversy. See 28 U.S.C. §§ 1332(a)(1), 1441(a). At the commencement of suit, plaintiff was a resident and citizen of Alabama, and defendant was a resident and citizen of Rhode Island.[1] Plaintiff Terry L. McClure alleges that she has suffered personal injuries which are the direct result of the negligent and/or wanton acts of her health care provider, defendant Dr. Pierre R. Michaud. The action presently is before the court on defendant's motion for summary judgment (doc. no. 20), and defendant's motion to strike plaintiff's evidentiary submission (doc. no. 26).

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in part, that

---

[1] Notice of Removal (doc. no. 1).



summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally id.* at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-movant's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (per curiam). Rule 56 permits the movant to discharge this burden with or without

2

supporting affidavits. *See Celotex Corporation*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593. The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493,

3

1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). The bottom line is "whether the evidence

4

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. BACKGROUND

In December of 1997, plaintiff, Terry L. McClure, was referred to defendant, Dr. Pierre R. Michaud, M.D., for evaluation of complaints of pain in her neck and shoulders, as well as examination of a skin rash under her breasts.[2] At the time, defendant was operating a plastic surgery center in Sheffield, Alabama. Upon examination, defendant concluded that plaintiff's symptoms could be alleviated by a surgical procedure known as bilateral breast reduction.[3] He determined that plaintiff was a good candidate for the procedure and, accordingly, a breast reduction surgery was scheduled.

Defendant testified that, prior to the surgical procedure, plaintiff was "fully informed of the risks associated with breast reduction."[4] Indeed, in an informed consent document, which plaintiff read and signed on January 28, 1998, plaintiff acknowledged that she was informed of the nature of the surgery,

---

[2] Defendant's evidentiary submission (doc. no. 22), Exhibit A (defendant's affidavit), ¶ 3.

[3] *Id.*, Exhibit B (progress notes).

[4] *Id.*, Exhibit A (defendant affidavit), ¶ 5.

its attendant risks, and of possible alternative procedures or treatment modalities.[5] The informed consent document cited the risks attendant to a bilateral breast reduction as including the following: post-operative bleeding; infection of the surgical site; change in nipple sensation; scarring; unsatisfactory result; pain; delayed healing; the loss of skin or nipple tissue; asymmetry in breast size and shape; and, allergic reaction to treatment.[6]

Despite the aforementioned risks, plaintiff submitted to bilateral breast reduction surgery on February 19, 1998, at the Helen Keller Memorial Hospital in Sheffield, Alabama.[7] Defendant excised 1,372 grams of tissue from plaintiff's right breast, and 1,419 grams from her left.[8] Plaintiff was discharged the following day without complication.

Two days later, however, plaintiff presented to the emergency room complaining of pain and excess drainage from her left breast.[9] Examination revealed that plaintiff had a hematoma. The hematoma was evacuated, and plaintiff was discharged from the hospital on February 23, 1998.[10] At a follow-up examination on March 10, 1998,

---

[5] *Id.*, Exhibit C (informed consent).

[6] *Id.*

[7] *Id.*, Exhibit A (defendant affidavit), ¶ 5.

[8] *Id.*, Exhibit B (progress notes).

[9] *Id.*

[10] Since plaintiff had eaten shortly before her visit to the emergency

6

plaintiff again complained of discomfort and blood drainage from the area around her left breast.[11] Defendant treated plaintiff with topical antibiotic ointment and prescribed Duracet, a medication for pain relief.

At another follow-up examination on March 16, 1998, defendant noted that, "physical examination shows almost complete loss of the left nipple areolar complex."[12] Defendant treated the affected area with dressing changes and topical antibiotics, and testified that "there was no need for surgical intervention at that time."[13] Shortly thereafter, plaintiff became dissatisfied with the care she was receiving from defendant, and sought medical care elsewhere.[14]

Plaintiff asserts that defendant's "care, including but not limited to the failure to properly perform a surgery, and provide adequate follow-up care, fell below the proper standard of care in the medical community."[15]  She further states that defendant's alleged malpractice has required three subsequent surgeries in order to repair the affected breast.[16]

---

room, the evacuation of the hematoma was deferred until the following day. *Id.*
  [11] *Id.*
  [12] *Id.*
  [13] *Id.*, Exhibit A (defendant affidavit), ¶ 5.
  [14] *Id.*
  [15] Notice of removal (doc. no. 1), Exhibit (Complaint), ¶ 4.
  [16] *Id.*, ¶ 3.

7

## III. DISCUSSION

Plaintiff's malpractice claim is governed by the Alabama Medical Liability Act ("AMLA"), Alabama Code § 6-5-480 et seq. See Mock v. Allen, No. 1980985, 2000 WL 1717042, at *3 (Ala. Nov. 17, 2000). In order to succeed on her claim, plaintiff must prove by substantial evidence that the health care provider breached the required standard of care, and that such breach proximately caused the injury complained of. Nelson v. Elba General Hospital and Nursing Home, Inc., No. 2990524, 2000 WL 1717175, at *2 (Ala. Civ. App. Nov. 17, 2000).[17] The applicable standard of care "is that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases." Alabama Code § 6-5-542 (1975) (1993 Replace. Vol.).[18]

---

[17] Alabama Code § 6-5-548(a) provides that

[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

[18] The AMLA also provides that in any personal injury action based on a health care provider's breach of the standard of care,

the minimum standard of proof required to test the sufficiency of the evidence to support any issue of fact shall be proof by substantial evidence. ... In all pleadings or motions filed in such actions testing the sufficiency of the evidence to support an issue

8

The Alabama Supreme Court has stated that,

> [t]he general rule in Alabama is that ... expert medical testimony is required to establish what is and what is

---

> of fact, including ... motions for summary judgment, ... the standard of proof required shall be proof by substantial evidence.

*Id.* § 6-5-549 (emphasis added). The phrase "substantial evidence" is defined in the AMLA as, "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." *Id.* § 6-5-542(5).

The Alabama Court of Civil Appeals has explained how the burden of production of a plaintiff, who is in state court, is affected by the AMLA:

> A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. ... When a movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present "substantial evidence" to support his position. ... In a medical malpractice case, such as here, Rule 56 must be read in conjunction with the "substantial evidence" rule found at § 6-5-548(a) ... of the Alabama Medical Liability Act.

Hempfleng v. Smith, 753 So. 2d 506, 508 (Ala. 1999). Despite the above, the former Fifth Circuit has stated that,

> it is well settled in this Circuit that in diversity cases <u>federal courts apply a federal rather than a state test for the sufficiency of evidence</u> to create a jury question.

. . .

> Federal courts must be able to control the fact-finding processes by which the rights of litigants are determined in order to preserve "the essential character" of the federal judicial system. Of course, we do not contend that this control will not affect state-created substantive rights in some cases. Ultimately, however, the integrity of our factfinding processes must outweigh considerations of uniformity. ... Thus, we agree ... that [when determining the sufficiency of the evidence in a diversity case,] a federal rather than a state test is the proper one.

Boeing Company v. Shipman, 411 F.2d 365, 368-70 (5th Cir. 1969) (emphasis added). *See also* Reinke v. O'Connell, 790 F.2d 850 (11th Cir. 1986) (holding that federal rule 56, not the Georgia rule, determines whether or not defendant's affidavit were sufficient to support summary judgment against plaintiff); Cole v. Elliott Equipment Co., 653 F.2d 1031, 1033 (5th Cir. 1981) ("In federal court ... the Federal Rules of Civil Procedure, and the decisions of the federal courts interpreting these rules, control as to procedural matters.").

> not proper medical treatment and procedure. An exception to this general rule exists where an understanding of the doctor's lack of due care or skill requires only common knowledge or experience.

*Powell v. Mullins*, 479 So. 2d 1119, 1120 (Ala. 1985). "The reason for this rule is that issues [raised] in medical malpractice cases are ordinarily beyond 'the ken of the average layman.'" *Golden v. Stein*, 670 So. 2d 904, 907 (Ala. 1995) (quoting C. Gamble, *McElroy's Alabama Evidence*, § 127.01(5)(c), at 333 (4th ed. 1991)).

In the instant case, defendant has produced his own affidavit in support of his motion for summary judgment. In it, defendant testifies to his qualifications and training.

> I obtained an M.D. degree from the University of Alabama School of Medicine, Birmingham, Alabama, in 1989. I served as a general surgical intern and as a resident in general surgery at the Hospital of Saint Raphael, New Haven, Connecticut, from 1989 to 1992. I completed a two (2) year plastic and reconstructive surgery residency at the University of Montreal, P. Quebec, Canada, in 1994. I received board certification in plastic surgery in 1997. I am familiar with the standard of care required of practitioners within my speciality when treating patients similar to Ms. Terry McClure in 1997 and 1998.[19]

Defendant then testified that,

> [a]t all times the care and treatment I rendered to [plaintiff] was appropriate and within the accepted standards of my profession. At no time did I deviate from the standard of care required of physicians practicing within my specialty. It is my opinion that I

---

[19] Defendant's evidentiary submission (doc. no. 22), Exhibit A (defendant affidavit), ¶ 2.

10

> exercised that degree of care, skill, and diligence that physicians in the same general neighborhood and in the same general line of practice as myself would ordinarily exercise in a like case in my care and treatment of [plaintiff].[20]

The Alabama Supreme Court has clearly held, "[o]nce the defendant [to a medical malpractice action] offers expert testimony in his behalf (albeit his own opinion), establishing lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim." *Swendsen v. Gross*, 530 So. 2d 764, 768 (Ala. 1988).

Plaintiff has failed to counter defendant's evidence with any expert testimony or other evidence sufficient to create a genuine issue of material fact on whether defendant breached the applicable standard of care. Plaintiff's evidence consists only of an invoice from a local business for the purchase of a surgical bra, and a series of photographs. The store invoice indicates that on May 5, 2001, plaintiff was fitted for a surgical bra, and that her breasts were of slightly different sizes.[21] The other evidence that plaintiff has submitted is a series of photographs showing the post-operative nature of her breasts.[22] Clearly, this evidence is

---

[20] *Id.*, ¶ 7.

[21] Plaintiff's evidentiary submission I (doc. no. 24).

[22] Plaintiff's evidentiary submission II (doc. no. 25).

11

insufficient to withstand summary judgment. The mere existence of an injury or an unwanted result of a medical procedure does not, alone, establish that defendant breached the standard of care. Accordingly, defendant's motion for summary judgment is due to be granted.

On May 18, 2001, defendant filed a motion to strike plaintiff's evidentiary submission (doc. no. 26) as untimely. Because this court has determined that summary judgment should be granted in favor of defendant, regardless of whether plaintiff's evidentiary submissions are stricken as untimely, the court will deny this motion as moot.

## IV. CONCLUSION

For the foregoing reasons, this court concludes that defendant's motion for summary judgment is due to be granted. Further, defendant's motion to strike plaintiff's evidentiary submission is due to be denied as moot. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 4th day of June, 2001.

United States District Judge